| United States District Court | Southern District of Texas |
|---|---|

| Rogelio Munoz, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | Civil Action H-07-0572 |
| | § | |
| Dr. Abbas Khashdel, et al, | § | |
| | § | |
| Defendants. | § | |

## Opinion on Dismissal

Rogelio Munoz sues Texas prison employees Dr. Abbas Khashdel, Dr. Larry Largent, Dr. Bobby Vincent, Katerine Pearson, and Dr. Kokila Naik for civil rights violations. The defendants move for summary judgment.

1. *Claims*

In 1991, prison officials assigned Munoz to a handicapped prison unit. In 1995 or 1996, Dr. Largent and Dr. Naik authorized prisoners suffering from Methicillin Resistant Staphylococcus Aureus (MRSA) to be housed in the handicapped dormitory. The doctors did this with full knowledge that the handicapped inmates had their own medical problems, like bed sores that go with paraplegia and related conditions. Munoz lived in a handicapped dormitory then.

Ambulatory inmates with MRSA were placed with handicapped inmates under the pretense that the skin lesions and boils on the MRSA patients were merely spider bites. This violated the Americans with Disabilities Act (ADA). If these patients had only spider bites, the doctors did not need to move them to handicapped quarters. The doctors were using the handicap dorm as an isolation ward.

The defendants disregarded the safety of the handicapped inmates by placing inmates with MSRA in the handicap dormitory. The handicapped inmates were forced to use the same toilets, showers, and sinks as the MRSA inmates. Within five weeks of the MRSA patients moving into Munoz's dorm, he was moved to another dorm. Within one to two weeks of that move, he developed skin lesions and boils. Medical staff told him these were spider bites. Since 1996, Munoz has suffered from many outbreaks of skin lesions and boils. On October 24, 2004, medical staff sent

Munoz to the Regional Medical Facility at the Estelle Unit. There, he again suffered several outbreaks of skin lesions.

On March 24, 2005, Munoz developed a skin lesion infected with MRSA on his left eye. He showed this to a nurse, who said she would tell the doctor. The next day the nurse gave Munoz eye drops of Gentamicin Sulfate solution. Munoz's severe swelling kept the solution from reaching his eyeball. Munoz did not see any medical personnel during the following eight to nine days. The severity of the swelling and the amount of blood and pus draining should have made it obvious to anyone, including a lay person, that Munoz needed medical attention.

Munoz was not examined by a doctor from March 24 through March 31, 2005, when he needed medical attention. On March 31, 2005, medical staff sent Munoz to the Estelle Unit emergency room. There, a doctor saw Munoz. The doctor then sent Munoz to the John Sealy Hospital. Medical staff there told him that he had MRSA, and that his boils were MRSA infections. Doctors told him about the dangers of the disease and that he was at a higher risk than other people.

On April 7, 2005, doctors told Munoz that because the swelling was so severe, the muscle in his left eyelid detached and he would need surgery on both eyelids. For several weeks, Munoz had to rely only on his right eye because of the detached muscle in his other eye.

2. *The Defendants' Medical Records*

The medical records submitted by the Defendants show the following. Before doctors recognized MSRA as a staph infection, they often diagnosed it as a spider bite. (58-5, p. 3). When the medical community became aware of MSRA, it was only found in hospitals, especially intensive care units. *Id.* Later, around 1993 and 1994, MSRA showed up in the outside community. *Id.* Prison doctors began to rule out spider bites as the cause of the symptoms they were seeing. *Id.* Prison medical personnel determined that MSRA was the cause of many of the boils and carbuncles they were seeing and they started prescribing more suitable antibiotics. *Id.*

Munoz suffers from insulin-dependent diabetes and hypertension. (58-2, p. 4). He is also a paraplegic. *Id.* His diabetes and paraplegia raise his susceptibility to skin openings, putting him at greater risk of infection. *Id.* Munoz's diabetes is poorly controlled because he has not followed prescribed treatment protocol. *Id.* His diabetes raises his risk of infections, including MRSA. *Id.* Munoz was first observed with MRSA on November 21, 2001. (59, Exh. C, p 1.) Since then, he has suffered other boils, lesions, and MRSA infections. *Id.*, pp. 5-7, 10-12, 14, 20. On August 6, 2003,

he said in a sick call request that he has MRSA.

On March 31, 2005, N.P. Pearson examined Munoz for his complaint about a left eye infection. *Id.*, p. 30. There is nothing in the medical records showing that Munoz told any medical personnel anything about his eye infection before March 31, 2005. There are no sick call requests or appointment notes that reflect Munoz requested to be seen by medical personnel before March 31, 2005. Munoz had been on an antibiotic for four days and eye drops for eight days with no relief from his symptoms before March 31, 2005. *Id.*, pp. 30, 35. Pearson consulted with Dr. Turner, who ordered Munoz transferred to the John Sealy Hospital for further examination and treatment. Exh. C, pp. 30-32.

On March 31, 2005, Munoz was admitted to the John Sealy Hospital. *Id.*, pp. 35-36. During his stay, medical personnel lanced and cultured Munoz's eye infection several times. *Id.* The cultures showed the infection to be MRSA. *Id.* Medical personnel treated Munoz with intravenous antibiotics, including Vancomycin. *Id.* On April 9, 2005, Munoz returned to his unit where he was continued with IV antibiotics. *Id.*

On May 5, 2005, Munoz went to the John Sealy Hospital for a follow-up appointment with the specialty eye clinic. (58-5, p. 4). Dr. Maffins noted that Munoz's left eye infection had healed. *Id.* However, based on Munoz's complaints about continued pain and the fact that his left eyelid was droopy, Dr. Maffins recommended that Munoz undergo bilateral levator dehiscence surgery to repair the droopiness in both eyelids. *Id.* Doctors performed the surgery on July 20, 2005. *Id.*

3. *Munoz's Summary Judgment Responses*

Munoz raises the following in his responses to the summary judgment motion (60, 64). He states he cannot find any entries in the defendants' medical records concerning March 24, 2005. He points out that the medical records show that when the doctor sent him to the Emergency Room with his eye problems, the records show he had been receiving eye drops for eight days. Munoz maintains this supports his claim of deliberate indifference from March 24, 2005 (the date he says he showed a nurse a skin lesion infected with MRSA on his left eye) through March 31, 2005. In his complaint, Munoz said this and that the nurse said she would tell a doctor. He also said in his complaint that the next day a nurse gave him eye drops of Gentamicin Sulfate solution.

In his first summary judgment response, Munoz says he begged for medical attention for eight to nine days, but was not examined or seen by anyone. (60, p. 18) He admits medical personnel gave

3

him Gentamicin eye drops. *Id.* In his second summary judgment response, Munoz admits medical personnel provided eight days of eye drops and four days of Kleflex antibiotics. (64, p. 4). Munoz claims the defendants deliberately withheld medical records that would have shown that no one saw him from March 24 through 31, 2005. (60, p. 3).

4. *Analysis*

The standard for a medical care claim is whether the plaintiff has suffered "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Negligence, medical malpractice, and gross negligence, do not show deliberate indifference. *Hare v. City of Corinth, MS.*, 74 F.3d 633 (5th Cir. 1996).

A defendant is deliberately indifferent when he knows an inmate faces a substantial risk of serious harm and disregards the risk by not taking reasonable measures. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A defendant is not liable unless he knows of and disregards an excessive risk to inmate health or safety; the defendant must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the defendant must also draw the inference. *Id.*

Munoz's claims concerning MSRA arose in 1995 and 1996. He sued in 2007. The statute of limitations bars these claims concerning MRSA. The limitations period for section 1983 cases in Texas is two years. *Owen's v. Okure*, 488 U.S. 235 (1989); TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). The limitations period starts when the plaintiff knows about the injury. *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980). Munoz filed this complaint on the MSRA claims more than eight years late.

Munoz's claims on MSRA also fail to show deliberate indifference. In 1996, MRSA was new and developing. Based on the understanding of MSRA in 1996, the defendants were not deliberately indifferent then. Munoz does not show deliberate indifference in 1995 and 1996. He does make any specific claim concerning his unit transfer in 2004.

In Munoz's unsworn summary judgment responses, he does not submit any evidence showing that medical personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly show a wanton disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). The defendants provided medical treatment to Munoz from March 24-31, 2005. Munoz

received eight days of eye drops and four days on antibiotics during this period. (64, p. 4). The nurse may have erred in not giving Munoz other medications or treatment, or in not sending him to a doctor sooner. However, any error is negligence or gross negligence. *Hare*, 74 F.3d at 644. That Munoz received eye drops and antibiotics shows the absence of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Munoz does not show deliberate indifference on his claim that from March 24, through March 31, 2005, he was not examined by a doctor.

The medical records and Munoz's papers show that prison medical personnel saw and treated him. The medical records showing exams, diagnoses, and medications refutes Munoz's claim of deliberate indifference to medical conditions. *Banuelos*, 41 F.3d at 235. Munoz's unsupported, conclusory claim that the Attorney General withheld medical records covering March 24-31, 2006, does not raise a material fact issue. *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993).

Deliberate indifference requires a showing that a defendant was subjectively aware of and disregarded a risk of serious harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). Munoz has not shown this. Where the records show medical care, a claim that defendants were deliberately indifferent to his serious medical needs is without merit. *See Varnardo v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991). Munoz has not defeated defendants' summary judgment showing and has not shown deliberate indifference. *Domino*, 239 F.3d at 756.

5. *Conclusion*

The summary judgment record does not raise any facts material to Munoz's claims. The defendants' motion for summary judgment (62) is granted. All other pending motions (46, 64, 65) and requests for relief are denied as moot.

Signed  01 - 20 - 10  , 2010, at Houston, Texas.

Lynn N. Hughes
United States District Judge